UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DEON BILBREW                                                                                    PLAINTIFF

V.                                              CIVIL ACTION NO. 3:23-CV-3153-KHJ-MTP

TRAVELERS INDEMNITY COMPANY, et al.                                  DEFENDANTS

ORDER

Before the Court is Defendant Travelers Indemnity Company's [17] Motion for Summary Judgment. The Court denies the motion.

I.  Background

This case arises from a car crash. And Travelers' motion centers on one issue: Was Plaintiff Deon Bilbrew a "resident relative" under his brother's car-insurance policy? To frame that issue, the Court first outlines the policy's terms. It then turns to the events giving rise to this case. Finally, it discusses the summary-judgment evidence as to whether Bilbrew maintained a dual residence at his brother's home.

Policy

Bilbrew's brother and sister-in-law, Corey and Kajuana Gray, had a policy with Travelers. Policy Decls. [21-1] at 1; *see also* Corey Gray Dep. [21-6] at 2–3. The policy provided for uninsured-motorist (UM) coverage. [21-1] at 1. That coverage extended to any "resident relative" of the Grays. *See* Policy [21-2] at 3–4, 9, 13, 15. The policy defines "[r]esident relative" as

> a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child. Your unmarried

dependent children, wards, and foster children while temporarily away from home will be considered residents if they intend to resume residing in your household.

*Id.* at 4.

## Bilbrew's Lawsuit

On January 23, 2023, an underinsured driver fell asleep at the wheel and crashed into Bilbrew's car. *See, e.g.*, Deon Bilbrew Dep. [21-3] at 6–7; Alexis Bilbrew Dep. [21-4] at 4. Bilbrew suffered serious injuries and incurred extensive medical bills. *See* [21-4] at 4–5; Pl.'s Resps. to Travelers' Interrogs. [21-7] at 3.

He then sued in state court. State Ct. R. [1-1] at 2–5. He raised various claims against Travelers, all of which hinged on Bilbrew having a "dual residence" at the Grays' home. *See id.* at 2–6. He also raised a negligence claim against the at-fault driver. *See id.* at 2–4. The driver quickly settled; Travelers timely removed, invoking the Court's diversity jurisdiction. *See* Notice of Removal [1].

## Bilbrew's Residence

After discovery, Travelers moved for summary judgment on Bilbrew's "resident relative" status. [17] at 1. The Court briefly describes the summary-judgment record before it. *See* Mem. Supp. Mot. [18]; Mem. Opp'n [22]; Reply [25].[1]

All agree that Bilbrew had his own residence: a home in Jackson that he rented. *See, e.g.*, Travelers' First Reqs. Admiss. [17-3] at 1. Bilbrew's mail, driver's license, tax records, medical records, car-insurance policy, and bank records all reflected his Jackson address. *Id.* at 1–3.

---

[1] The Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3).

2

But Bilbrew claims that he had a dual residence at the Grays' home. He offers evidence that, since the Grays bought that home, Bilbrew has been a "fixture" there. Kajuana Gray Dep. [21-5] at 6. Bilbrew has the door code; the Grays would often learn he was there because of "the noise that was made or [because they] just ran into him." [21-6] at 5, 9. And Bilbrew has "always" had his own "designated space" to stay. [21-3] at 13, 16. He has used it. For years, he has stayed in the Grays' home for weeks or months at a time. *See* [21-6] at 7–8 (noting that Bilbrew stayed for up to seven or eight months at one time).[2] In fact, Bilbrew began staying at the Grays' home "more frequently once he got married"—and began struggling with marital issues. *Id.* at 7. In short, Bilbrew always had "full-time access" to the Grays' home, and he "became that other person in the house." *Id.* at 6, 9.[3]

The parties offer some subsidiary evidence as to Bilbrew's claimed dual residency. Bilbrew kept "all of the items necessary for comfortable living in his space" at the Grays' home. [22] at 2, 8 (noting that Bilbrew has clothes, toiletries, and food there). He shared meals, helped with household activities, and completed his online coursework there. *Id.* at 9. And he "has given his brother money from time to time to offset his brother's mortgage, cable, and utilities." [18] at 7.

---

[2] *See also, e.g.*, [21-6] at 7 ("Sometimes even two or three months . . . . It became normal to us all."); *id.* at 6 ("[S]ometimes it will be two weeks. Sometimes it will be a month or sometimes it will be a couple of months.").

[3] Kajuana Gray compared Bilbrew to her daughter, a college student. *See* [21-5] at 3, 5 ("Deon is my big kid. So my daughter comes and goes[,] and Deon does the same thing that she does.").

3

Against that backdrop, the Court focuses in on the two months before the accident. Around Thanksgiving of 2022, Bilbrew and his wife "got in the biggest fight [they] have had." [21-3] at 8. During that fight, Bilbrew's wife hit him multiple times. *Id.* at 14. So Bilbrew left. *See id.*[4] And he moved into his brother's home, where he stayed every night for at least two weeks. *See* [21-4] at 7.

For the sake of his children, Bilbrew moved back in with his wife before Christmas. *See id.* at 10. But Bilbrew's wife testified that, after the fight, the Grays' home (1) "felt more like home to [Bilbrew]"; (2) was a "safe haven"; and (3) was still a place where Bilbrew "lived with his brother and [sister-in-law] as family members." *Id.* Even so, after the holidays, Bilbrew kept living primarily at his own home. *See, e.g.*, [21-3] at 9. During that time, Bilbrew kept visiting the Grays' home about twice a week. *Id.* at 15. And he spent the night there about twice. *Id.* at 8.

Bilbrew's accident occurred on January 23, 2023. [21-4] at 3. His resulting injuries prevented him from climbing the Grays' stairs up to "his room" where he had always stayed. [21-3] at 16; [21-5] at 6; [21-8] ¶ 5. Still, Bilbrew submits that he has "resided at [the Grays' home] since [his] brother first purchased the property and thought of the property as [his] home." [21-8] ¶ 3. He "had no plans of ever terminating [his] residency" there, and he still considers it his "home and safe place." *Id.* ¶ 4.

---

[4] At that point, neither Bilbrew nor his wife knew whether their relationship would survive. *See* [21-3] at 14; [21-4] at 9–10; Deon Bilbrew Decl. [21-8] ¶ 6 (stating that, after the fight, Bilbrew "did not intend on coming back").

4

II.     Standard

    A. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (cleaned up). And a movant is "entitled to a judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Carnegie Techs., LLC v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (cleaned up).

The Court "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). The Court "may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (cleaned up). "The sole question is whether a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor." *Id.* (cleaned up).[5]

---

[5] "[E]ven in the absence of a factual dispute, a district court has the power to 'deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.'" *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

B. Residency

"To recover UM benefits provided by an insurance policy, a claimant must first prove that he or she is an insured under either the insurance policy []or [Mississippi's] UM statute." *Johnson v. Preferred Risk Auto. Ins.*, 659 So. 2d 866, 871 (Miss. 1995) (en banc) (cleaned up). "Insurance contracts are construed strictly against the insurer and in favor of the policyholder." *Id.* And courts interpret the UM statute "liberally to provide coverage and strictly to avoid or preclude exceptions or exemptions from coverage." *Id.* at 871–72 (cleaned up).

"'Resident' has no technical or fixed meaning; the term is flexible, elastic, slippery, and somewhat ambiguous." *Id.* at 872 (cleaned up). "The term has an evasive way about it, with as many colors as Joseph's coat." *Id.* (cleaned up). "Whether a person 'resides' at a particular location is a practical question which turns on the degree of one's attachment to a particular place of abode." *Id.* at 873 (cleaned up). "[T]he term 'residence' imports merely having abode at a particular place which may be one of any number of such places at which one is, at least from time to time, physically present." *Id.* (cleaned up). "Even a temporary and transient habitation can qualify." *Id.* (cleaned up). At the same time, "the word 'resident' means a person has more than just a 'mere physical presence, and . . . the transient visit of a person for a time to a place does not make him or her a resident while there.'" *Robinson v. State Farm Mut. Auto. Ins.*, 52 So. 3d 416, 421 (Miss. Ct. App. 2010) (quoting *Johnson*, 659 So. 2d at 872).

Significantly here, the Court must account for "one of the preliminary threshold and most important considerations . . . *before* reaching the necessity of

6

balancing residency factors when determining whether someone is a resident." *Johnson*, 659 So. 2d at 874. "That consideration is that one may have more than one 'residence[,]' making that person a 'resident' of more than one locale." *Id.*; *see also, e.g.*, *Aetna Cas. & Sur. Co. v. Williams*, 623 So. 2d 1005, 1009 (Miss. 1993) (en banc) ("[A] person may have multiple residences simultaneously.").[6]

"The two concepts most often discussed in defining 'resident' are 1) presence; and 2) an intent to remain for some time." *Johnson*, 659 So. 2d at 872. But "there is no fixed formula for determining how much of any factor (presence, intent, or time) is required." *Id.* "While actual presence is a factor under Mississippi law, it is the intent of the party claiming residency to remain for some time at the particular place in question that is primarily determinative." *Young v. State Farm Mut. Auto. Ins.*, 31 F. App'x 151, 2001 WL 1747633, at *3 (5th Cir. Dec. 4, 2001) (per curiam) (unpublished table decision) (citing *Johnson*, 659 So. 2d at 871); *see also McLeod v. Allstate Ins. Co.*, 789 So. 2d 806, 812–13 (Miss. 2001) (en banc) (reversing grant of summary judgment given genuine issue of material fact about the "main question" of intent).

---

[6] *See also Williams*, 623 So. 2d at 1010 ("Former President of the United States, George Bush, for instance, was a resident of Texas and Maine, in addition to being a resident of Washington, D.C. His 'official residence' was a hotel suite in Houston, Texas, although he stayed there on a relatively infrequent and transient basis. Likewise, college students are still residents of their parents' home even if they rarely return there during the school year.").

III.   Analysis

Based on the summary-judgment record, a reasonable jury drawing all inferences in Bilbrew's favor could conclude that he was a "resident relative" of the Grays' home. The Court thus denies Travelers' [17] Motion for Summary Judgment.

A reasonable jury could conclude that, at the time of the accident, Bilbrew had a second residence at the Grays' home. As discussed, "the term 'residence' imports merely having abode at a particular place which may be one of any number of such places at which one is, at least from time to time, physically present." *Johnson*, 659 So. 2d at 873 (cleaned up). Residence is a "practical question which turns on the degree of one's attachment to a particular place of abode." *Id.* (cleaned up). And Bilbrew has presented evidence that he (1) always had his own room at the Grays' home; (2) always had full-time access to that home; (3) stayed there for weeks or months at a time; (4) thought of it as his home; and (5) never intended to terminate his residency there. *See supra* pp. 3–5. A reasonable jury crediting that evidence—and drawing all inferences in Bilbrew's favor—could return a verdict for Bilbrew. So summary judgment is improper. *Guzman*, 18 F.4th at 160.

IV.   Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court denies Defendant Travelers Indemnity Company's [17] Motion for Summary Judgment.

The parties must contact the Magistrate Judge's chambers within five days to schedule a settlement conference. Order [29] at 1. The current pretrial conference

and trial settings are cancelled. The Court will reset those for a later date if necessary.

SO ORDERED, this 19th day of December, 2024.

s/ *Kristi H. Johnson*  
UNITED STATES DISTRICT JUDGE